# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **CURTIS J. BULLER** | * | **CIVIL ACTION NO. 06-0552** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Curtis J. Buller, born August 29, 1957, filed applications for disability insurance benefits and supplemental security income payments on June 3, 2004, alleging disability as of August 23, 2003, due to Crohn's disease and a ruptured disc.[1] After a request for review was denied by the Appeals Council, claimant filed for judicial review with this Court.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

---

[1]On August 8, 1996, claimant underwent a lumbar laminectomy with disk excision at L4-L5. (Tr. 125-26).

*Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Dr. Kenneth Laborde dated March 29, 2004 to April 13, 2004**. Claimant was admitted on March 29, 2004, with recurrent nausea, and vomiting that became feculent consistent with a small bowel obstruction. (Tr. 123). Dr. Laborde performed an exploratory laparotomy, resection of the terminal ileum with side-to-side ileocolostomy, and an incidental appendectomy. (Tr. 121). The discharge diagnosis was ileitis with stricture formation, suspicious for Crohn's disease. (Tr. 123).

**(2) Records from Dr. Sydney Crackower dated August 8, 1996 to May 20, 2004**. Claimant complained of lower back pain since an injury in 1994. (Tr. 129, 135-49). He was prescribed Lortab, which gave him good relief. (Tr. 129). On May 20, 2004, he was prescribed Percocet and Xanax. (Tr. 142).

**(3) Records from University Medical Center ("UMC") dated February 24, 2004 to May 17, 2004**. On February 24, 2004, claimant complained of abdominal cramping, nausea and vomiting, and constipation. (Tr. 188). The diagnosis was a partial small bowel obstruction, substance abuse, and hypertension. (Tr. 189).

On March 23, 2004, claimant was admitted with epigastric pain. (Tr. 157). It was noted that he also had polysubstance abuse, but had lied about his usage. The assessment was epigastric pain. Claimant failed to show for his next two appointments. (Tr. 152-53).

**(4) Records from Dr. Kirtland D. Swan dated September 24, 1997 to May 6, 2004**. On September 24, 1997, claimant was seen after he fell off of a scaffold ladder at work. (Tr. 226). He complained of pain to his right ankle with a laceration to his left lower leg. The assessment was a laceration and sprain. (Tr. 229).

On April 15, 2004, claimant complained of depression and anxiety. (Tr. 228). He had been diagnosed with Crohn's disease. On May 6, 2004, claimant reported that his Crohn's symptoms were better. (Tr. 227, 351). His diarrhea had resolved. The assessment was Crohn's and anxiety.

**(5) Report from Dr. James N. Arterburn dated April 29, 2004**. Dr. Arterburn wrote that claimant had been seen recently for a small bowel obstruction. (Tr. 230). The pathology report had shown chronic transmural thickening of the bowel. Dr. Arterburn opined that from a clinical standpoint, Crohn's disease was by far the most likely etiology of claimant's findings.

**(6) Residual Functional Capacity ("RFC") Assessment dated July 20, 2004**. The medical consultant determined that claimant could lift/carry 20 pounds

occasionally and 10 pounds frequently. (Tr. 232). He could stand, walk, and sit about 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs, and frequently balance, stoop, kneel, crouch, and crawl. (Tr. 233). He had no other limitations. (Tr. 234-35).

**(7) Records from Dr. Arterburn dated April 29, 2004 to July 27, 2004**. On July 27, 2004, claimant complained of left quadrant pain, diarrhea 12 to 15 times per day with occasional blood, and nausea. (Tr. 241). On examination, claimant had positive bowel sounds and some tenderness to the left lower quadrant. Dr. Arterburn recommended a colonoscopy. (Tr. 242). He increased claimant's Pentasa to six tablets three times a day.

**(8) Records from Quick Care of Louisiana dated June 27-30, 2004**. Claimant complained of severe abdominal pain. (Tr. 249). He wanted a refill on his pain medications. The assessment was abdominal pain and hypertension. (Tr. 251).

**(9) Records from Dr. Crackower dated June 18, 2004 to May 27, 2005**. On June 18, 2004, claimant complained of moderate to severe lumbar pain radiating to the buttocks. (Tr. 342). He was prescribed Xanax for anxiety and Percocet for pain. (Tr. 345). Dr. Crackower noted that claimant was disabled from work. (Tr. 342).

Dr. Crackower switched claimant's pain medication to Oxycontin in January, 2005, and to Dilaudid in March, 2005. (Tr. 326, 330). On April 29, 2005, he

reported that claimant was doing well on Dilaudid. (Tr. 323). Claimant had no side effects from his medications. (Tr. 320).

**(10) Claimant's Administrative Hearing Testimony**. At the hearing on June 28, 2005, claimant was 47 years old. (Tr. 373). He was a high school graduate, and had taken college courses in architecture and environmental science. He had completed vocational training in plumbing. (Tr. 378).

Claimant had past work experience in carpentry, industrial radiography, and pneumatic technology. (Tr. 374, 382-83). He testified that he had not worked since his injury. (Tr. 374). He stated that he could not work because he had no control over his bowel movements. (Tr. 378).

Regarding complaints, claimant testified that he had Crohn's disease. (Tr. 374). He stated that he was always nauseous, and had constant stomach cramps. (Tr. 376). He reported that he had constant diarrhea and no control over his bowels. He complained that it took him 30 to 40 minutes to go to the bathroom. (Tr. 392).

Claimant said that he was 5 feet 9 inches tall and weighed 165 pounds, and that his weight varied between 160 and 175. (Tr. 377). He also complained of back pain with occasional leg pain. (Tr. 385-86).

As to restrictions, claimant testified that he could lift only 20 pounds because of a hernia. (Tr. 386-87). He had no problems with walking and standing. He

reported that he had some problems with sitting because of his back. (Tr. 388).

Regarding activities, claimant testified that he picked up around the house, vacuumed, and washed dishes. (Tr. 389). He stated that he read, and did some painting and drawing. (Tr. 390). He reported that he did not drive. He said that he visited with his mother once or twice a week. (Tr. 391).

**(11) Administrative Hearing Testimony of Dr. George Smith, Medical Expert ("ME")**. Dr. Smith testified that claimant did not meet or equal the listings under 5.07 or 5.08. (Tr. 400). However, when the ALJ asked Dr. Smith whether "[t]here may, or may not be things that would actually apparently match up with the listing," Dr. Smith responded, "Correct." (Tr. 401).

**(12) Administrative Hearing Testimony of Harris Rowzie, Vocational Expert** ("VE"). Mr. Rowzie classified claimant's past work as an instrument technician as light and skilled, a carpenter as medium and skilled, and an industrial x-ray operator as light and semi-skilled. (Tr. 402). The ALJ posed a hypothetical in which he asked Mr. Rowzie to assume a claimant of the same age, education, and work background, who had repeated episodic diarrhea occurring more than once a day where he would have to access the bathroom for as much as 30 minutes at a time. (Tr. 404). In response, the VE testified that he would not be able to do his past work, or maintain any other work.

**(13) The ALJ's Findings**. Claimant argues that the ALJ erred in failing to find claimant disabled pursuant to the testimony of both the medical and vocational experts. Because the ALJ failed to find that claimant was disabled, I find that this case should be **REVERSED,** and that claimant should be awarded benefits as of August 23, 2003, which was his onset date.

In the decision, the ALJ determined that claimant had status-post bowel obstruction, "as apparent sole and organ damage of suspected Crohn's disease, with occasional loose bowels," as well as moderate lumbar degenerative disc disease, which impairments were "severe," but not severe enough to meet or equal one of the impairments listed in Pt. 404, Subpt. P, App. 1 of the Social Security Regulations. (Tr. 17). While incontinence is not specifically mentioned in the listings, the Fifth Circuit has held that it may be an impairment for purposes of the Social Security Act and **must be considered** by the Commissioner in determining whether a claimant is disabled. (emphasis added). *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

In *Crowley*, the claimant complained of having urinary and fecal incontinence that occurred five to seven times a month with no consistent pattern. While the consulting physician acknowledged that Crowley suffered from incontinence that was "episodic, intermittent and unpredictable," he concluded that Crowley did not suffer from any non-exertional impairments which rendered him unable to work. The

district judge determined that Crowley's fecal incontinence "appear[ed] at most to be a nuisance," and denied the claim. 197 F.3d at 199. The Fifth Circuit, finding "no evidence whatsoever in the record to support that conclusion," remanded the case so that the Commissioner could consider the incontinence claim appropriately.

Here, claimant's complaints of incontinence are much more severe than the claimant's in *Crowley*. He testified at the hearing that he was always nauseous, had constant stomach cramps, had constant diarrhea and no control over his bowels. (Tr. 376). Additionally, he reported that it sometimes took 30 to 40 minutes for him to go to the bathroom. (Tr. 392). His treating physician, Dr. Arterburn, noted that claimant complained of diarrhea 12 to 15 times per day with occasional blood. (Tr. 241). The ALJ apparently agreed that claimant most likely had Crohn's disease, which would certainly support the claimant's testimony and his statements to his treating physician, Dr. Arterburn,

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5ᵗʰ Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's

impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)).

In this case, the ALJ concluded that claimant's impairments were not severe, despite the reports from his treating physician. At claimant's last visit with Dr. Arterburn, he noted that claimant's major complaint was that he had diarrhea 12 to 15 times per day with occasional blood. (Tr. 241). The vocational expert, Mr. Rowzie, testified that a claimant with repeated episodic diarrhea occurring more than once a day where he would have to access the bathroom for 30 minutes at a time would not be able to maintain employment. (Tr. 404).

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (citing *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)). Further, the ability to work only a few hours a day or to work only on an unpredictable or intermittent basis does not constitute the ability to engage in "substantial gainful activity." *Tucker v. Schweiker*, 650 F.2d 62, 64 (5th

Cir. 1982); *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978); *Prestigiacomo v. Celebrezze*, 234 F.Supp. 999 (E.D. La. 1964).

Here, the vocational expert stated that a claimant who had episodic diarrhea which required him to access the bathroom for as much as 30 minutes at a time would not be able to maintain employment. (Tr. 404). This testimony is uncontroverted. Under these circumstances, claimant would not be able to engage in substantial gainful activity.

Accordingly, the undersigned recommends that this case be **REVERSED**, and the claimant be awarded benefits. The undersigned recommends that claimant be awarded benefits as of August 23, 2003, which is the date of onset.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN**

**(10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 2, 2007, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE